IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

MATTHEW BROWNFIELD     PLAINTIFF

v.     CIVIL ACTION NO. 3:22-CV-74-SA-RP

JOHN LUTZOW,
BUDGET TRUCK RENTAL, LLC,
MOUNTAIN LAUREL ASSURANCE CO.,
JOHN DOE, and KMMH, INC.     DEFENDANTS

ORDER AND MEMORANDUM OPINION

On March 17, 2022, Matthew Brownfield initiated this civil action by filing his state court Complaint [2] against John Lutzow, Budget Truck Rental, LLC ("BTR"), and Mountain Laurel Assurance Company in the Circuit Court of Marshall County. On May 4, 2022, BTR filed a Notice of Removal [1], removing the case to this Court, premising federal jurisdiction on the basis of diversity. Brownfield thereafter filed an Amended Complaint [43], naming John Doe and KMMH, Inc. as additional Defendants. Now before the Court is Lutzow's Motion for Summary Judgment [95].[1] Having reviewed the parties' filings, along with the applicable authorities, the Court is prepared to rule.

*Factual and Procedural Background*

This case arises from a vehicular accident that occurred on November 6, 2020, in Marshall County, Mississippi and resulted in Brownfield being severely injured.

On the day of the accident, Lutzow was driving a moving truck ("Budget truck") that he rented from BTR the day before. A four-wheel trailer, which carried Lutzow's Toyota Tacoma truck, was attached to the Budget truck. Lutzow was traveling from Tallahassee, Florida to

---

[1] KMMH and BTR filed Joinders to the Motion [95]. *See* [100, 101].

Colorado Springs, Colorado. Lutzow's wife, Laura Lutzow, was trailing him in her personal vehicle.

According to Lutzow, around 4:30 PM, he was traveling northbound on the two-lane onramp from U.S. Interstate 22 to Interstate 269 in Marshall County when the trailer (which, again, was carrying Lutzow's Toyota Tacoma truck) became unhitched from the Budget truck. Lutzow contends he immediately pulled the Budget truck over on the left shoulder, his wife pulled her vehicle over on the right shoulder, and they activated the emergency flashers on the Budget truck, the Tacoma, and Mrs. Lutzow's vehicle. Lutzow contends that the trailer itself did not have emergency flashers. After pulling over, part of the trailer was on the left shoulder and the other part was obstructing the left traffic lane. Lutzow further contends he attempted to pull the trailer out of the road but was unsuccessful because the wheels on the trailer were locked. At this point, Lutzow noticed the safety chains were broken on the trailer.

Although the Tacoma truck was still secured on the trailer, some personal contents that were stored in the bed spilled out on to the road. Mrs. Lutzow removed the items from the road. Around 4:38 PM, after Mrs. Lutzow had finished clearing most of the debris from the road, she called 911 to report the decoupling of the trailer.

Lutzow contends that he called Budget Roadside Service to report the trailer decoupling from the Budget truck at 4:53 PM. Lutzow alleges that the subject accident occurred while he was on the phone with Budget Roadside Service. According to Lutzow, during the call, Mrs. Lutzow can be heard in the background attempting to direct traffic around the trailer, followed by a screeching sound from tires, which Lutzow contends was from a motorcycle impacting with a Chevy pickup truck that was also traveling on the onramp. Lutzow then tells the representative that "a motorcyclist had rear ended a truck." [96] at p. 4. Lutzow contends he saw the motorcycle

fishtailing and thereafter Brownfield, who was driving the motorcycle, was thrown off the motorcycle and landed on his head. Following the accident, Mrs. Lutzow immediately went to help Brownfield, and at his request, called his wife.

Brownfield recounts the events differently. According to his Memorandum [108], Brownfield was driving northbound on the onramp of Interstate 269 on his Harley-Davidson motorcycle when he struck the trailer that was previously attached to the Budget truck. Although unsure how long the trailer had been detached from the Budget truck, Brownfield alleges that he thought he saw the trailer come off the Budget truck immediately before he hit the trailer in the right traffic lane. Brownfield further contends that after the trailer detached from the truck "[i]t was almost perpendicular to the road at the time of the wreck, so neither the reflectors on the trailer or the vehicle that was loaded on the trailer would have been visible to [Brownfield]." [108] at p. 2. However, in his deposition, though admitting that he could not see that well due to it being dark outside, Brownfield testified that he did not see any emergency flashers.

The investigating officer, Corporal Grafton Lowery, arrived at the scene around 5:45 PM, approximately an hour after the accident occurred. According to Brownfield's Memorandum [108], Corporal Lowery observed the trailer in the left traffic lane and the Budget truck approximately 20 yards past the trailer. Corporal Lowery did not get a chance to question Brownfield at the scene because Brownfield had already been airlifted to the trauma center by the time he arrived. However, he did talk to Lutzow. Corporal Lowery contends that when he asked Lutzow what happened, Lutzow said that "he looked out of his side mirror of the Budget truck and saw the driver of a motorcycle flipping on the highway, so he pulled over and stopped." [108] at p. 4. According to Corporal Lowery, Lutzow never mentioned another vehicle or a driver of a Chevy truck.

3

Brownfield's Amended Complaint [43] sets forth multiple claims, one of which is that Lutzow's negligence caused the accident. Through the present Motion [95], Lutzow seeks dismissal of that claim. As noted above, the other Defendants have joined in this requested relief.[2]

*Summary Judgment Standard*

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Nabors v. Malone*, 2019 WL 2617240, at *1 (N.D. Miss. June 26, 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

"The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.'" *Id*. (quoting *Celotex*, 477 U.S. at 323). "The nonmoving party must then 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting *Celotex*, 477 U.S. at 324). Importantly, "the inferences to be drawn from the underlying facts contained in the affidavits, depositions, and exhibits of record must be viewed in the light most favorable to the party opposing the motion." *Waste Management of La., LLC v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019) (quoting *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 646 (5th Cir. 1997)). However, "[c]onclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate

---

[2] For context, one of the claims Brownfield asserts is an uninsured/underinsured motorist claim against Mountain Laurel Assurance Company ("MLAC"); however, MLAC did not file a Joinder to the Motion [95].

substitute for specific facts showing a genuine issue for trial." *Nabors*, 2019 WL 2617240 at *1 (citing *TIG Ins. Co. v. Sedgewick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)) (additional citations omitted).

*Analysis and Discussion*

Lutzow contends that the undisputed facts establish as a matter of law that he did not act negligently and that, even assuming he was negligent, the decoupling of the trailer was too remote from the accident for liability to attach. In other words, he contends that Brownfield cannot establish proximate cause. The Court will address these arguments in turn.

The Court will first address the contentions as to how the accident occurred. From the outset, Lutzow has taken the position that an unidentified driver of a Chevy pickup truck caused Brownfield's injuries. Specifically, he contends:

> In the minute preceding the subject accident, a teal blue green Chevy Silverado pickup truck was traveling in the left lane (the lane with the trailer). Contemporaneously, Mr. Brownfield was traveling in the right lane. In the moments leading up to the accident, the operator of the Chevy Truck merged into the right lane directly in front of Mr. Brownfield's lane of travel, resulting in the subject accident.

[96] at p. 4.

Lutzow further asserts that "the undisputed facts demonstrate that the decoupled trailer had come to rest between fifteen and forty-five minutes prior to the subject accident." [96] at p. 1. To support his position, Lutzow relies on his deposition and his wife's deposition, as well as the recorded phone call to Budget Roadside Service. Lutzow cites to a portion of his deposition where he recounts the events of the accident:

> Q. And let's talk about that then, the motorcycle incident itself, tell us what you observed.
>
> A. My wife and I had finished cleaning off the roadway moving the stuff out of the roadway and onto both

> shoulders and we were walking back towards the trailer. I heard some squealing tires, turned around and looked and saw the motorcycle fishtailing and then I watched it, the motorcycle, the right side of the motorcycle impact with the left rear fender of the Chevy pickup and then landing on his head in the middle of the road in front of the Chevy Pickup.
>
> Q. So where—let's back up a little bit. So the Chevy pickup, where is that?
>
> A. He's in the right lane.
>
> Q. And then where is the motorcycle?
>
> A. The motorcycle is behind the Chevy pickup.
>
> Q. So did the motorcycle rear-end the pickup truck?
>
> A. Not rear-ended, but the right side of the motorcycle impacted the left side rear fender of the pickup truck.

[95], Ex. 1 at p. 11-12.

Furthermore, Lutzow contends that while he was on the phone with the roadside representative, his wife could be heard in the background directing traffic around the trailer and soon thereafter, screeching sounds from tires could be heard. At this point, Lutzow contends that he reported to the representative "[t]hat a motorcyclist rear ended *a* truck." [96] at p. 4 (emphasis added). Lutzow attached the audio recording of the call to his Motion. *See* [95], Ex. 7. Upon reviewing the recording, the Court notes that, although Lutzow contends that he stated that a motorcyclist rear ended *a* truck, it is clear from the audio recording that Lutzow actually stated that the motorcyclist rear ended *the* truck. [95], Ex. 7 (1 min. 52 sec. mark). To the Court, it is unclear whether Lutzow is referring to the unidentified driver of the Chevy pickup truck or the Budget truck that he was operating. At a minimum, a reasonable factfinder could find that he was referring to the Budget truck.

To further support his argument, Lutzow also points to his wife's deposition testimony as to how the accident occurred:

> Q. And when the motorcycle collision occurred did you see it happen?
>
> A. Yes.
>
> Q. Tell us what you observed.
>
> A. I was waving traffic, I was behind the dolly, I was waving traffic and there hadn't been any traffic for I believe 5 or 10 minutes and I saw a blue-green pickup and a motorcycle coming and then the gentleman in a blue-green pickup his face was down looking at something and the motorcycle saw us first and started to move over and when the pickup driver looked up and then he quickly moved over, tried to move over and that's when they collided.
>
> Q. When you first observed the truck and the motorcycle coming to you where were they, were they in the right lane, left lane?
>
> A. If I'm turned around with my back to the dolly then they would have been—well, it would have been in the left lane if I'm going with the flow of traffic
>
> Q. Was the, I guess was the motorcycle in front of the pickup truck?
>
> A. No.
>
> Q. The pickup truck was in front of the motorcycle?
>
> A. Correct.
>
> Q. And I think you said the motorcycle moved into the right lane?
>
> A. Correct.
>
> Q. Sometimes thereafter the truck then got over and that's when the collision occurred?
>
> A. No. The motorcycle started going over, the pickup truck driver looked up quickly moved over and that's when they hit.

7

> Q. When the actual collision occurred between the two vehicles occurred where was that in relation to the trailer, was it like even with the trailer, was it three car lengths back, 10 car lengths; do you know?
>
> A. No, it was probably at least two car lengths back because I was standing right behind the dolly so it would have been crushed.

[95], Ex. 2 at p. 7-8.

On the other hand, Brownfield contends that he hit the trailer that was previously attached to the Budget truck. In his Memorandum [108], he argues that he "thought he saw the trailer come off the Budget truck immediately before he hit the trailer in the right lane. He did not recall seeing a pickup truck before the incident." [108] at p. 4. In his deposition, Brownfield testified:

> Q. When did you first see the trailer?
>
> A. When it was in my lane.
>
> Q. Was it moving?
>
> A. I don't recall. It was just there.
>
> Q. When you say your lane were you in the left lane or the right lane?
>
> A. The right lane.
>
> Q. So you saw the trailer in the right lane?
>
> A. I saw, what I thought I saw the trailer come off the vehicle, but only thing I recall is the trailer being in my right lane and hitting me.
>
> . . .
>
> Q. Do you ever recall seeing a pickup truck driving on the roadway immediately prior to the accident?
>
> A. No.
>
> Q. Don't recall a pickup truck coming over into your lane of travel?

8

>           A.      No.

[107], Ex. 2 at p. 3-4.

In his deposition, Corporal Lowery testified that he was unaware that there may have been another vehicle involved in the accident:

>    Q.   Did Mr. Lutzow say anything to you at the scene about a third vehicle, a blue pickup truck that struck Mr. Brownfield's motorcycle?
>
>    A.   Not to my knowledge.
>
>    Q.   If he had said something like that would you remember it?
>
>    A.   Yes sir.
>
>    Q.   And would you have put it in your notes?
>
>    A.   I would have investigated it, yes sir.

[107], Ex. 3 at p. 11.

Additionally, Corporal Lowery testified that the only vehicles on the scene were the motorcycle, the trailer, the Budget truck, and medical and law enforcement personnel. Moreover, Corporal Lowery's crash report only included two vehicles—Brownfield's motorcycle and the Budget truck with the trailer attached. The report made no mention of a Chevy pickup truck. However, according to the report, there was no reported damage to the trailer.

Considering all of this evidence, it is clear to the Court that the parties' version of events differ significantly. There are numerous conflicting pieces of evidence. For example, there is evidence that there was no damage to the trailer. There is also testimony that the trailer had been stationary in the left lane between fifteen and forty-five minutes before the accident, despite Brownfield testifying that the trailer hit him in the right lane. Lutzow contends that Brownfield's motorcycle hit an unidentified Chevy pickup. However, there is no testimony, other than Lutzow and his wife's, to support that version of events. And there were no other vehicles on the scene of

9

the accident other than the Budget truck, motorcycle, and medical and law enforcement personnel, there was no mention of a third vehicle in Corporal Lowery's crash report, and it is unclear from the recorded phone call between Lutzow and the roadside representative whether Lutzow is saying the motorcycle hit the Budget truck or a different truck. In other words, questions of fact exist as to the way in which the accident occurred.

As noted above, Lutzow raises a secondary argument based upon proximate cause. Lutzow relies on multiple cases to support his position, such as: *Ready v. RWI Transp.*, LLC, 203 So.3d 590 (Miss. 2016); *Robison v. McDowell*, 247 So.2d 686 (Miss. 2008); and *Clark v. EPCO, Inc.*, 2009 WL 2366054 (S.D. Miss. July 29, 2009). All of these cases address whether a driver was the proximate cause of a subsequent accident *between two other vehicles* and the foreseeability issues associated therewith. Notably, based upon the Court's review of those cases, none of them involve factual issues as to how the accident itself occurred—which is the issue here. Considering the number of factual disputes around the manner in which the accident occurred, the Court cannot properly analyze Lutzow's proximate cause argument. In other words, the argument relies on a version of events that is heavily disputed by competent summary judgment evidence. Therefore, the Court finds that summary judgment is not appropriate at this time.

*Conclusion*

For the reasons set forth above, Lutzow's Motion for Summary Judgment [95] is DENIED. Brownfield will be permitted to proceed to trial on his negligence claims.

SO ORDERED, this the 26th day of April, 2023.

/s/ Sharion Aycock  
UNITED STATES DISTRICT JUDGE